UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

RICHARD PUCKETT,

     Plaintiff,

v.

SECURITAS SECURITY SERVICES USA,

     Defendant.

Case No. _____

JURY TRIAL DEMANDED

**COMPLAINT**

NOW COMES Plaintiff, Richard Puckett, by and through his attorney, Sean L. Ruppert, Esq. of Kraemer, Manes & Associates LLC, and files this Complaint alleging as follows:

**I. Nature of the Action**

1.    Plaintiff brings this action under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq. Plaintiff alleges that terminated from his employment in retaliation for requesting medical leave protected by the FMLA.

**II. Jurisdiction and Venue**

2.    This Court has jurisdiction over Plaintiff's ADA discrimination and FMLA retaliation claims pursuant to 28 U.S.C. § 1331.

3.    Defendant has a regular place of business located within the Commonwealth of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

### III. Parties

4.     Plaintiff, Richard Puckett ("Plaintiff"), is an adult individual with a primary residence located at 304 Woody Way, Sneads Ferry, NC 28460.

5.     Defendant, Securitas Security Services USA., ("Defendant"), is a Delaware business corporation with a regular place of business located at 600 Waterfront Dr. #105, Pittsburgh, PA 15222.

### IV. Facts

6.     Plaintiff was continuously employed by Defendant from approximately July 23, 2002, through January 26, 2017.  Plaintiff's job title was Response Team Member.

7.     Plaintiff's duties typically consisted of manual tasks, including lifting, kneeling, climbing, driving patrol routes, searching personnel and vehicles for contraband, as well as participating in foot patrols and armed responses to incidents.

8.     Plaintiff suffers from lower back pain, caused by arthritis and Spinal Stenosis.

9.     In 2011, Plaintiff went through a period of symptom flares and was approved for intermittent FMLA leave.   In subsequent years, Plaintiff obtained renewed approval for intermittent FMLA leave as flares occurred.  Plaintiff has never exhausted his total amount of FMLA-mandated leave during any period of time.

10.     On Sunday, January 22, 2017, Plaintiff sought treatment at urgent care for severe muscle spasms in his back.  He was given a cortisone shot to relieve the pain and spasms.  Plaintiff reported to work for his regularly scheduled shifts the following three (3) days.

11.     On the morning of January 26, 2017, Plaintiff's condition worsened to the point that he could not move his back at all without experiencing severe pain.  He notified Defendant

that he would not be able to report for his shift, in compliance with company protocols, and then sought treatment from the emergency department at his local hospital.

12.     That same morning, Plaintiff contacted Defendant's Human Resources department and spoke to Lori Ayers.  He requested FMLA paperwork at this time.

13.     After speaking to Ms. Ayers, Plaintiff received a phone call from his scheduling supervisor, Mr. Cottage, who informed him that he was required to attend a meeting the following day.  Plaintiff called Ms. Ayers again that day about the status of his FMLA paperwork.  Despite historically having paperwork being processed within minutes, Ms. Ayers stated that she "did not have time to process" the documents.

14.     The following day, Mr. Puckett attended the scheduled meeting with Mr. Cottage and Project Manager Lester Kavanaugh.  His union representative was also in attendance.

15.     Plaintiff was told that he must resign from the position.  When he refused, he was threatened that Defendant would block him from collecting Unemployment Compensation and take away his health insurance if he did not agree to resign.  The stated reason was excessive absenteeism.  Plaintiff was forced to resign under duress.

## V. Allegations

### COUNT I
### Disability Discrimination in Violation of the ADA

16.     The averments contained in the preceding paragraphs are incorporated herein as though set forth at length.

17.     Defendant paid Plaintiff money on a regular payroll date in exchange for Plaintiff performing certain tasks occurring within the normal course of Defendant's business activities. Defendant therefore constitutes an "employer" within the meaning of the FMLA.

18.     Arthritis is chronic condition in which one or more joints become inflamed. Symptoms typically include pain and stiffness.

19.     Spinal Stenosis is a narrowing of the spaces within one's spine.  The narrowing causes pinching of the spinal cord and the nerves around it, causing pain, tingling, or numbness in one's legs, arms, or torso.

20.     It is typical for Spinal Stenosis patients to experience "flares" where their symptoms become more intense for a period of time.

21.     These symptoms interfere with multiple essential life activities. These include, but are not limited to: driving, holding objects, lifting objects, standing, walking, and running.

22.     Plaintiff was employed by Defendant on a full-time basis for approximately nine (9) years prior to his need for FMLA leave.

23.     Plaintiff informed Defendant of his diagnosed condition in or around 2011.

24.      Defendant employed more than 50 individuals within a 75-mile radius at the time of Plaintiff's employment, including during the period in which Plaintiff required medical leave.

25.     Plaintiff requested, and was approved, for intermittent FMLA leave in order to recover from a symptom flare.

26.     Plaintiff renewed his request for intermittent FMLA leave several times between 2011 and 2017. These additional requests occurred when Plaintiff experience a flare.

27.     On January 22, 2017, Plaintiff sought medical treatment at an urgent care facility after experiencing a symptom flare. Plaintiff was treated with a cortisone shot to relieve the symptoms.

28.     Plaintiff reported to work January 23-25, 2017.

29.     Plaintiff's symptoms worsened on January 26, 2017. He was unable to attend work on that day because of the pain.

30.     Plaintiff contacted Defendant on January 26, 2017 to request intermittent FMLA leave. Rather than approving his leave, Defendant informed Plaintiff that he must attend a meeting with management on the following day.

31.     During the meeting on January 27, 2017, Plaintiff was informed that he could either resign, or be terminated. Defendant informed Plaintiff that if he did not resign, that they would attempt to block his application of Unemployment Compensation, and COBRA benefit continuation.

32.     The stated reason for the termination was "excessive absenteeism."

33.     Under duress, Plaintiff agreed and resigned his employment.

34.     Plaintiff's resignation comprises a constructive discharge.

35.     Plaintiff believes, and therefore avers, that Defendant terminated Plaintiff's employment in retaliation for his request for medical leave, which had occurred only one (1) day prior.

36.     Plaintiff suffered actual damages as a direct result of Defendant's unlawful actions.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendants, and award Plaintiff: 1) lost wages; 2) front pay as deemed appropriate by the court; 3) compensatory and punitive damages against the Defendant as allowed by law; 4) Plaintiff's legal fees; 5) pre-judgment and continuing interest; 6) court costs; and 7) any other such relief as the Court may deem just and proper.

Respectfully submitted,

/s/ Sean L. Ruppert
Sean L. Ruppert, Esquire
**KRAEMER, MANES &
ASSOCIATES LLC**
PA ID: 314380
US Steel Tower
600 Grant St, Suite 4875
Pittsburgh, PA 15219
(412)626-5550 Direct
(412)637-0144 Fax
sr@lawkm.com